**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

STATE OF FLORIDA and CHARLES H.
BRONSON, Florida Commissioner of
Agriculture,

       Plaintiffs,

    v.                                  Case No.: 3:10cv503/RV/MD

LISA P. JACKSON, as Administrator
of the United States Environmental
Protection Agency, and THE UNITED
STATES ENVIRONMENTAL PROTECTION
AGENCY,

       Defendants.

_____/

## ORDER

      This case involves the question whether a rule promulgated by the United States Environmental Protection Agency ("EPA") is arbitrary and capricious, and thus unlawful. The rule being challenged sets numeric nutrient criteria for Florida's fresh waters (lakes and streams). In addition to this case, the first of several recent cases filed in Pensacola, there are six other cases in this division that challenge the same rule --- one of the others has also been assigned to me [Mosaic Company, Inc. v. Jackson, 3:10cv506-RV/EMT]; four others have been assigned to Judge Casey Rodgers [CF Industries, Inc. v. Jackson, 3:10cv513-MCR/MD; Destin Water Users, Inc. v. Jackson, 3:10cv532-MCR/EMT; Florida Stormwater Association, Inc. v. Jackson, 3:11cv11-MCR/MD; Florida Pulp and Paper Association Environmental Affairs, Inc. v. Jackson, 3:11cv47-MCR/EMT]; and the sixth was assigned to Judge Richard Smoak [The Fertilizer Institute v. EPA, 3:10cv507-RS/MD]. Prior to

any of these cases being filed in this court, a similar and substantially related case was filed in the Tallahassee Division and assigned to Judge Stephan Mickle [Florida Wildlife Federation, Inc. v. Jackson, 4:10cv511-SPM/WCS]. And for more than two years prior to the filing of any of these "rule challenges," Judge Robert Hinkle has been presiding over a consolidated action --- also in the Tallahassee Division --- involving the EPA's determination that Florida's nutrient standards for waters in the state were inadequate, which resulted in the EPA's decision to promulgate the rule in the first place [Florida Wildlife Federation, Inc. v. Jackson, 4:08cv324-RH/WCS].[1]

There are several motions now pending in this case. First, because this case was the first of those filed in this division, the plaintiffs have moved to consolidate the other substantially similar Pensacola-filed cases with this one (docs. 4 and 15), in accordance with our court's long-standing policy of consolidating all such cases before the judge handling the first-filed one. The plaintiffs have requested a hearing and oral argument on this motion (doc. 6). And lastly, the defendants have filed a motion to transfer all the cases, as consolidated, to the Tallahassee Division (doc. 8). The plaintiffs are uniformly opposed to this transfer.

**I. Discussion**

The first two motions can be disposed of quickly. All the parties agree that the seven cases filed (six cases still pending) in this division should be consolidated and handled by one judge. Accordingly, the plaintiffs' motion to consolidate will be granted and the six cases are consolidated into this case (with the consent and approval of Judge Rodgers). The plaintiffs' request for a hearing and oral argument

---

[1] The seventh rule challenge filed in this division [The Fertilizer Institute v. EPA, 3:10cv507-RS/MD], originally assigned to Judge Smoak, has recently been transferred to Tallahassee specifically so the court there "may consider whether this case should be consolidated with the other pending cases in the Tallahassee Division that appear to be substantially similar" [doc. 17 at 2].

*Case No.: 3:10cv503/RV/MD*

on that motion will be denied, as moot. I will next consider the defendants' motion to transfer all six of these Pensacola-filed cases (hereinafter, the "case") to the Tallahassee Division.[2]

Pursuant to Title 28, United States Code, Section 1404, for the convenience of parties or witnesses, and in the interest of justice, a court may transfer any civil action to another district or division where it may have been originally brought. As this case could have been brought in the Tallahassee Division, the only issue to be decided is whether the interests of justice and convenience warrant transfer to that court. This decision "is left to the sound discretion of the trial court" and will not be overturned except for "a clear abuse of discretion." Brown v. Connecticut Gen. Life Ins. Co., 934 F.2d 1193, 1197 (11th Cir. 1991).

In deciding whether to transfer a case under Section 1404, there is no single dispositive factor, but courts will generally consider: (1) convenience of witnesses; (2) location of relevant documentary evidence and access to sources of proof; (3) convenience of the parties; (4) locus of operative facts; (5) availability of process to compel the attendance of unwilling witnesses; (6) relative financial means of the parties; (7) the forum's familiarity with the governing law; (8) weight accorded the plaintiff's choice of forum; and lastly, (9) trial efficiency and the interests of justice, based on a totality of the circumstances. See, e.g., Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). The parties seem to agree that several of these factors --- specifically (2), (5), (6), and (7) --- are not relevant on the facts of this case. I will consider the remaining factors in turn.

---

[2] To the extent the plaintiffs have requested oral argument, not just on their motion to consolidate, but also on the defendants' motion to transfer, that request will be denied, too. The pleadings that have been filed in support of, and in opposition to, the motion to transfer have adequately framed the relevant issues, and oral argument is not necessary.

Case No.: 3:10cv503/RV/MD

### *Convenience of witnesses*

"This initial factor is 'probably considered the single most important factor in the analysis whether a transfer should be granted.'" <u>Summers-Wood L.P. v. Wolf</u>, 2008 WL 2229529, at *2 (N.D. Fla. 2008) (quoting <u>Gonzalez v. Pirelli Tire, LLC</u>, 2008 WL 516847, at *2 (S.D. Fla. 2008)). But, in this case, the factor is neutral. Although certain of the plaintiffs have suggested that they plan to request evidentiary hearings in this matter, and that "likely witnesses" for the hearing may reside in or around Pensacola, I agree with the defendants that evidentiary hearings should not be required as the issues disputed in this case will have to be decided primarily (if not solely) on the very extensive administrative record. Therefore, this factor does not weigh in favor of, or against, transfer.

### *Convenience of the parties*

Similarly, because this case will be decided on the basis of the administrative record, there should be little inconvenience to the parties if it is transferred to the Tallahassee Division. Indeed, other than the several plaintiffs in the <u>Destin Water Users Group</u> case --- who are based in the Pensacola Division --- it appears that all the other plaintiffs are either (i) national or multinational industry associations with no significant operations in the Pensacola area; or, (ii) as is the case with plaintiffs State of Florida; its Agriculture Commissioner; and Florida Stormwater Association, Inc., actually located in Tallahassee.

### *The locus of operative facts*

No relevant acts or omissions took place specifically in this district. The basis of the challenged rule was drawn from a multitude of sources, including comments, scientific studies, and data compiled from all around the State of Florida. There is nothing particular to Pensacola in terms of "operative facts" at issue. Accordingly, this factor does not weigh in favor of litigating the case in the Pensacola Division any more or less than in the Tallahassee Division.

## *The weight accorded a plaintiff's choice of forum*

As I previously stated in <u>Summers-Wood L.P. v. Wolf</u>, <u>supra</u>:

> [O]rdinarily, a plaintiff's choice of forum is given considerable deference. <u>Robinson v. Giarmarco & Bill, P.C.</u>, 74 F.3d 253, 260 (11th Cir.1996) (plaintiffs' choice of forum should not be disturbed unless it is clearly outweighed by other considerations). However, it is well settled that "where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." <u>Gonzalez</u>, <u>supra</u>, 2008 WL 516847, at *2 (citing <u>Windmere Corp. v. Remington Prod.</u>, 617 F. Supp. 8, 10 (S.D. Fla. 1985); <u>Balloveras v. Purdue Pharma Co.</u>, 2004 WL 1202854, at *1 (S.D. Fla. 2004); <u>Amazon.com v. Cendant Corp.</u>, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005); [<u>Hernandez v. Graebel Van Lines</u>, 761 F. Supp. 983, 990 (E.D.N.Y. 1991)]. As one district court has explained: "This court respects a plaintiff's right to file suit in the forum of her choosing. That choice is not entitled to the weight it is generally accorded, however, where there is no material connection between the forum and the events underlying the cause of action." <u>Delarosa v. Holiday Inn</u>, 2000 WL 648615, at *5 (S.D.N.Y. 2000) (citing cases); <u>see</u> <u>also</u> <u>Chierchia v. Treasure Cay Servs.</u>, 738 F. Supp. 1386, 1388 (S.D. Fla. 1990) (where a plaintiff "has no personal connection to this forum . . . her choice of forum is entitled to slightly less deference than would otherwise be the case"); <u>accord</u> <u>Hernandez</u>, <u>supra</u>, 761 F. Supp. at 990 ("where the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not accorded 'great weight' and in fact is given reduced significance.").

<u>Supra</u>, 2008 WL 2229529, at *3. Thus, in the absence of any real connection to this division, the plaintiffs' choice of forum is not entitled to special deference on

the particular facts of this case.[3]

### *Interests of justice, based on a totality of the circumstances*

And finally, I must consider whether the interests of justice weigh in favor of transfer. I have little difficulty concluding that they do. A primary component of the "interests of justice" factor is "the desire to avoid multiplicity of litigation as a result of a single transaction or event." See 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3854 at 250 (3d ed. 2007). Although the cases filed in Pensacola and the two earlier-filed cases in Tallahassee are not identical --- and may involve different claims and issues --- there is obviously substantial overlap between them. There is thus a real risk that different judges in different divisions will be making separate and potentially inconsistent findings of fact and conclusions of law in closely-related actions. As noted in supra note 3, the mere possibility that may have been a goal of filing in this division would support transfer by itself.

In the interests of justice (and to promote judicial economy and consistency), the case should be transferred to the Tallahassee Division and assigned to Judge Hinkle, as he has the first case involving the subject at issue. See, e.g., Manuel, supra, 430 F.3d at 1135 (where actions pending in two courts involve overlapping

---

[3] This is especially so in light of the material in the record suggesting that the plaintiffs' decision to file in this division was motivated by forum shopping (doc. 14-1, 2011 WLNR 727633 Fearing Judge, Industry Opposes EPA's Favored Venue for Nutrient Suits, Inside the EPA (Jan. 14, 2011) (citing "industry source familiar with the litigation" who stated that the State and industry plaintiffs selected the Pensacola Division specifically because they did not want the Judge assigned to the related actions in Tallahassee to hear their claims as they fear he "may not be sympathetic to the plaintiffs' core argument that EPA's necessity determination underlying the numeric criteria was arbitrary"). While I recognize that this article is hearsay, it seems to reflect a perception (whether true or not) that is troubling. The fact that several plaintiffs chose to file in the Pensacola division --- even though, as noted, they are based in Tallahassee --- seems to add credence to that perception.

issues and parties, "there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule"); Mann Mfg., Inc. v. Hortex, Inc., 439 F.2d 403, 408 n.6 (5th Cir. 1971) ("regardless of whether or not the suits here are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in . . . the [court] first seized of the issues"). It will be for Judge Hinkle to decide whether the case should be consolidated with either or both of the two earlier-filed cases pending in that court. See Fed. R. Civ. P. 42 (providing that if separate cases before the court involve "a common question of law or fact", the court may join the actions for hearing or trial, consolidate them, or issue any other order to avoid unnecessary cost or delay).

In sum, after review and consideration of the above factors, I find, in combination, that they weigh in favor of transfer. As "'it is undisputed that courts will not blindly prefer the plaintiffs' choice of forum' over a more [appropriate] location'" [Summers-Wood L.P., supra, 2008 WL 2229529, at *4 (citation omitted)], I will exercise my discretion and transfer this now-consolidated case to the more appropriate Tallahassee Division, specifically so that it can be handled by the judge who has already been handling the related cases.

## II. Conclusion

For the reasons stated above, the plaintiffs' motion to consolidate (docs. 4, 15) is GRANTED. This case will be consolidated with the following cases: Mosaic Company, Inc. v. Jackson, 3:10cv506-RV/EMT; CF Industries, Inc. v. Jackson, 3:10cv513-MCR/MD; Destin Water Users, Inc. v. Jackson, 3:10cv532-MCR/EMT; Florida Stormwater Association, Inc. v. Jackson, 3:11cv11-MCR/MD; Florida Pulp and Paper Association Environmental Affairs, Inc. v. Jackson, 3:11cv47-MCR/EMT. The plaintiffs' request for oral argument on their motion to consolidate (doc. 6) is DENIED, as moot. The defendants' motion to transfer the case, as consolidated, to Judge Robert Hinkle in the Tallahassee Division (doc. 8) is GRANTED. Once

transferred, Judge Hinkle can decide whether to consolidate these rule challenges with the other related pending case(s) in that division.

**DONE and ORDERED this 15th day of February, 2011.**

/s/ *Roger Vinson*
ROGER VINSON
Senior United States District Judge